UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GENESIS HEALTHCARE INC.,** | § | |
| | § | |
| **Debtor,** | § | |
| | § | |
| ______________________ | § | |
| | § | |
| **JOANNE ALMEDA, et al.,** | § | |
| | § | |
| | § | |
| **Plaintiffs/Appellants,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-CV-2563-B** |
| | § | |
| **GENESIS HEALTHCARE INC., et al.,** | § | |
| | § | |
| **Defendants/Appellees.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal challenging an order that the parties refer to as the "Final DIP Order,"[1] which was issued by the U.S. Bankruptcy Court for the Northern District of Texas on August 28, 2025. Doc. 1-1, Notice Appeal, 2. Having considered the parties' arguments, the Court **DISMISSES** this appeal as **MOOT** under 11 U.S.C. § 364(e). A final judgment will follow.

## I.

## BACKGROUND

Appellee Genesis Healthcare, Inc. ("Genesis") operates healthcare facilities all over the

[1] The full title for the Final DIP Order is "Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief." The Final DIP Order appears at docket number 677 in the bankruptcy proceeding below.

country. *See* Doc. 27, Br. Appellants, 7; Doc. 34, Br. Appellees, 4. Appellants are a group of sixty tort claimants who hold personal injury or wrongful death claims against Genesis and its affiliates. *See* Doc. 27, Br. Appellants, 4.

In July 2025, Genesis and several affiliates filed a petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code, which allows them to continue to operate as "debtors in possession" while pursuing a plan of reorganization. *See* Doc. 34, Br. Appellees, 4–5. To keep their business afloat amid the reorganization process, Genesis and its affiliates sought the Bankruptcy Court's approval of a post-petition financing plan. *See id.* at 6, 10–15; Doc. 27, Br. Appellants, 10–11. The financing plan, finally approved by the Bankruptcy Court through the Final DIP Order, allowed Genesis to borrow up to $30 million from various lenders who would receive security interests and liens in exchange. *See* Doc. 27, Br. Appellants, 10–11; Doc. 34, Br. Appellees, 10, 15.

As relevant to this appeal, the Bankruptcy Court made several findings to support approval of the proposed post-petition financing. The findings included that Genesis (and its affiliated debtors) needed the funding "to avoid serious and irreparable harm," that loan terms that would have been more favorable were unavailable to the debtors, and that these terms were "negotiated in good faith and at arm's length." Doc. 27-1, App., at APP_0669–71, APP_0674. On those findings, the Bankruptcy Court ordered that

> the claims, security interests and liens, and other rights, benefits, and protections granted to the DIP Secured Parties [i.e., the lenders] (and the successors and assigns thereof) pursuant to this Final Order and the DIP Loan Documents shall each be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is reversed or modified on appeal.

*Id.* at APP_0674.

Appellants take issue with just one aspect of the Final DIP Order: it approved releases of all

claims held by Genesis against its pre-petition lenders who had decided to also loan money post-petition. *See* Doc. 27, Br. Appellants, 11–13.[2] According to Appellants, those released claims possibly include some which Appellants could have brought outside of bankruptcy. *See id.* at 13. Appellants also complain that the parties who are released from liability in the Final DIP Order are defined too broadly and include "insiders" of Genesis. *See id.* at 14–15. Genesis and Intervenor-Appellee Welltower OP LLC (one of the lenders) dispute Appellants' characterization, but they lead with the argument that the issue raised on appeal is statutorily moot under 11 U.S.C. § 364(e), a Bankruptcy Code provision offering protection to good-faith post-petition lenders. *See* Doc. 34, Br. Appellees, 18–26; Doc. 31, Br. Welltower, 17–22.

The Court considers Appellants' challenge and the Appellees' mootness argument below.

## II.

## LEGAL STANDARD

When reviewing a bankruptcy court's order, a district court sits as an appellate court. *See First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie Inc.*), 713 F.3d 285, 293 (5th Cir. 2013) (citation omitted). Acting as an appellate court, the district court should dismiss an appeal that is statutorily moot. *See Gilchrist v. Westcott* (*In re Gilchrist*), 891 F.2d 559, 560 (5th Cir. 1990). Besides that, "[g]enerally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *Renaissance Hosp.*, 713 F.3d at 294 (citation omitted).

[2] Dispelling any doubt on the basis of their challenge, Appellants (who also label themselves "Claimants") explained in their reply brief:

> Here, the Claimants are not asking this Court to invalidate any of the terms in the Final DIP Order pertaining to the validity of the credit or debt incurred, or any priority or lien granted pursuant to section 364 of the Bankruptcy Code. Instead, the Claimants have filed the instant appeal to invalidate the improper Releases contained in the Final DIP Order.

Doc. 35, Reply, 6.

**III.**

**ANALYSIS**[3]

Appellants' challenge to the release of claims in the Final DIP Order is moot under 11 U.S.C. § 364(e), and this appeal must therefore be dismissed. Section 364 allows a bankruptcy debtor in possession[4] to, with court permission, obtain new credit during bankruptcy as necessary to continue operations. When a bankruptcy court authorizes a debtor in possession to obtain new credit under § 364, the statute's subsection (e) kicks in. It provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

§ 364(e). Because lenders would likely be reluctant to loan money to a bankrupt organization if they could not do so on highly favorable terms, § 364(e) offers reassurance against invalidation of the loan terms on appeal, so long as the lender acted in good faith and the bankruptcy court's authorization of the loan was not stayed. *See TMT Procurement Corp. v. Vantage Drilling Co.* (*In re TMT Procurement Corp.*), 764 F.3d 512, 521 (5th Cir. 2014) (citations omitted) ("[T]he purpose of § 364(e) is 'to overcome a good faith lender's reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy judge's authorization.'").

---

[3] Under Federal Rule of Bankruptcy Procedure 8019(b), oral argument must be allowed unless the district judge "examines the briefs and record and determines that oral argument is unnecessary" for one of three reasons. Having examined the briefs and record, the Court determines that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Fed. R. Bankr. P. 8019(b)(3).

[4] Section 364 describes a bankruptcy trustee as filling this role, but 11 U.S.C. § 1107 allows a debtor in possession to "perform all the functions and duties . . . of a trustee" (with some exceptions that do not apply here).

The parties dispute whether § 364(e) applies to the release of claims in the Final DIP Order. If it does, all agree that the Final DIP Order was not stayed pending appeal. And, as Appellants focus their argument on asserting that § 364(e) does not apply to the Final DIP Order's releases of liability, Appellants do not make any argument that the lenders did not act in good faith. *See* Doc. 35, Reply, 6 n.4 ("Because section 364(e) does not apply to the Claimants' challenge to the Releases, the DIP Lenders' good faith is irrelevant."). Whether this Court can entertain this appeal therefore hinges on whether § 364(e) applies to the releases of liability in the Final DIP Order.

Several Fifth Circuit decisions suggest that § 364(e) "forbids appellate review" or "prevent[s] the appellate reversal of an order"—not just parts of an order—issued under § 364 to "obtain post-petition financing." *See Bank of N.Y. Tr. Co. v. Off. Unsecured Creditors Comm.* (*In re Pac. Lumber Co.*), 584 F.3d 229, 240 & n.15 (5th Cir. 2009). In other words, "[a] failure to obtain a stay of an authorization under [§ 364] moots an appeal of that authorization where the . . . lender acted in good faith." *See TMT Procurement*, 764 F.3d at 519. Those statements are merely suggestive, however, and not necessarily all in one direction because it is unclear whether "an authorization" under § 364 refers to everything in an order purportedly made under § 364 or instead to just certain things (perhaps not including releases of claims).

In other Fifth Circuit cases, the idea that § 364(e) moots appeals of entire orders plays a role in the analysis on adjacent issues. For example, in interpreting an order approving post-petition financing from a new lender to avoid foreclosure on the debtor's property by a previous lender, the Fifth Circuit needed to determine whether the order was limited only to securing the liens for the newly obtained credit or more broadly covered the entirety of the three-way deal. *See AKD Invs., LLC v. Mag. Invs. I, LLC* (*In re AKD Invs.*), 79 F.4th 487, 492–93 (5th Cir. 2023). The party seeking the

more limited view relied on § 364(e) to support its position that the order was limited only to securing the liens. *See id.* at 493 n.5. The Fifth Circuit rejected this argument, stating, "we have never read § 364(e) to focus myopically on liens." *Id.* "Instead," the Fifth Circuit has read § 364(e) "as a stay requirement" that moots an appeal of any authorization under § 364 that had not been stayed. *Id.* (first citing *TMT Procurement*, 764 F.3d at 519; and then citing *Pac. Lumber Co.*, 584 F.3d at 240). To that effect, in another case where a party in a bankruptcy case sought a stay pending appeal of a § 364 order, the Fifth Circuit noted the "harsh and potentially final consequences . . . of a denial of a stay." *In re First S. Savings Ass'n*, 820 F.2d 700, 708 (5th Cir. 1987).

As additional support for the idea that § 364(e) applies to the whole order, consider the Fifth Circuit's handling in *TMT Procurement* of an argument that the bankruptcy court lacked authority to issue a post-petition financing order. *See* 764 F.3d at 519–20. The bankruptcy court in that case had authorized the debtors to borrow money in exchange for a security interest in certain shares of stock that the appellant argued were not "property of the estate." *See id.* If the shares of stock were not property of the estate, the bankruptcy court could not authorize actions in connection with the shares of stock, nor did it have subject-matter jurisdiction generally over that property. *See id.* But the Fifth Circuit reasoned that statutory mootness under § 364(e) must be assessed first before reaching the "property of the estate" issue, regardless of whether the latter issue was a matter of statutory authority or of subject-matter jurisdiction. *See id.* The Fifth Circuit's treatment of this lack-of-authority argument suggests, for purposes of this case, that Appellants' argument against the releases of liability is likewise mooted under § 364(e), even if the Bankruptcy Court lacked authority to approve those releases.

Further, the Fifth Circuit's interpretation of a related mootness provision in 11 U.S.C. §

363(m) sheds light on how it would interpret § 364(e). Section 363(m) is a similar statutory mootness provision for sales of assets, and "§ 364(e) was modeled after § 363(m)." *Id.* at 519 (citing *Burchinal v. Cent. Wash. Bank* (*In re Adams Apple, Inc.*), 829 F.2d 1484, 1489 (9th Cir. 1987)). For § 363(m), the Fifth Circuit has expressly adopted as "the rule in this circuit" that a "failure to obtain a stay is fatal," even if the basis for challenging an order under § 363 is jurisdictional. *See Gilchrist v. Westcott* (*In re Gilchrist*), 891 F.2d 559, 561 (5th Cir. 1990). That rule for § 363(m) suggests that failing to obtain a stay for a bankruptcy court's order under § 364 is also fatal, regardless of the basis for the challenge.

Outside of the Fifth Circuit, there are two competing theories as to § 364(e)'s scope. One theory is that "§ 364(e) broadly protects any requirement or obligation that was part of a post-petition creditor's agreement to finance." *Weinstein, Eisen & Weiss, LLP v. Gill* (*In re Cooper Commons, LLC*), 430 F.3d 1215, 1219 (9th Cir. 2005). Under that view, "any provisions of the financing agreement that [a lender] might have bargained for or that helped to motivate its extension of credit are protected by § 364(e)." *Id.* at 1219–20. This view focuses on the part of § 364(e) that says the reversal or modification on appeal cannot "affect the validity of any debt." *See id.* at 1219. If a condition of financing was part of the bargained-for exchange, excising it from the bankruptcy court's order would "affect the validity" of the loan. *See id*. As applied to this case, *Cooper Commons* suggests that if the release of claims in the Final DIP Order possibly motivated the post-petition lenders to loan money to Genesis, then § 364(e) bars this Court from touching the releases on appeal.

The other theory of § 364(e)'s scope is that it does not reach bankruptcy court actions that are not actually authorized by § 364. *See Shapiro v. Saybrook Mfg. Co.* (*In re Saybrook Mfg. Co.*), 963

F.2d 1490, 1493 (11th Cir. 1992). Under this view, a reviewing court should first determine whether the bankruptcy court's action was authorized by statute; if not, the attempt to reverse or modify that action is not mooted by § 364(e). *See id.* Applying *Saybrook* here, if releasing claims in the Final DIP Order is not something that the bankruptcy court had authority to do, then § 364(e) does not bar this Court from modifying or reversing the bankruptcy court's approval of the releases.

Based on the Fifth Circuit's statements of how § 364(e) and § 363(m) work, the *Cooper Commons* rule is likely the rule that the Fifth Circuit would adopt and therefore the rule that this Court applies here. The Fifth Circuit case law describes § 364(e) as protecting an entire order regardless of the basis for challenging it, and the Fifth Circuit's treatment of the related § 363(m) provision buttresses that understanding of § 364(e). *Cooper Commons* adds on the perhaps common-sense requirement that the aspect of the order that is challenged should at least be part of the bargain for the post-petition loan—otherwise, merely labeling any order as made under § 364 would control the inquiry, exalting form over substance. In contrast, the Fifth Circuit would predictably reject the competing *Saybrook* rule because the Fifth Circuit has rejected the notion that, when either § 364(e) or § 363(m) apply, someone can challenge the bankruptcy court's authority or jurisdiction to act.

Turning back to this case, Appellants' challenge must be dismissed as moot under § 364(e) because the releases in the Final DIP Order were part of the bargain that led to the lenders extending post-petition financing. As Welltower explained in its brief, the releases are a key bargained-for provision because "[n]o lender would agree to lend money only to have that money used to pursue claims against them." Doc. 31, Br. Welltower, 21–22. Appellants do not contest that the releases were important to the agreement for the lenders to provide post-petition financing. Therefore, because modifying or reversing the challenged aspect of the Final DIP Order would "affect the

validity" of the approved loan, because the Final DIP Order was not stayed, and because there is no argument that the lenders did not act in good faith, § 364(e) bars the Court from issuing the requested relief.

## IV.

## CONCLUSION

For the foregoing reasons, this appeal is **DISMISSED AS MOOT** under 11 U.S.C. § 364(e). A final judgment will follow.

**SO ORDERED.**

**SIGNED: August 10, 2026.**

_________________________________
**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**